FILED
SUPERIOR COURT
OF GUAM

2014 NOV -7 PM 2: 32

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

vs.

LUIS CHRISTOPHER HOCOG,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CF 0044-13

**DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III on August 14, 2014 upon Defendant Hocog's Motion to Suppress Statements. Alternate Public Defender John P. Morrison represents Defendant and Assistant Attorney General James C. Collins represents the People of Guam ("the People"). For the reasons set forth below, the Court DENIES the Motion.

## BACKGROUND

On February 5, 2013, a grand jury indicted Defendant on a single felony count of Possession of a Schedule II Controlled Substance with Intent to Distribute in violation of 9 G.C.A. §§ 67.401.1(a)(1) and (b)(1). According to the People's Declaration filed with the Magistrate's Complaint, Guam Police Department and Customs & Quarantine officers executed a search warrant for Defendant's residence on January 24, 2013. While on the premises, officers found methamphetamine and drug paraphernalia.

According to the People's Motion in Opposition, police confronted two female minors and two infants in the house whose relation to Defendant is unclear. (People's Resp. to Def.'s



Mot. to Suppress Statements 2:1-3). Other than Defendant no adults were present at the scene. The People's Motion further states that, according to Defendant, "he had been living at the location for several months and that the date in question was the first time the children were present at the residence." (Id. 2:20-22). According to Defendant's Motion to Suppress Statements, officers detained both Defendant and the children, and read Defendant his Miranda rights while he was handcuffed in his residence. (Def.'s Mot. to Suppress Statements 2:10-14). He then allegedly made inculpatory statements. (Id.). Although Defendant asserts "he was concerned [the] children would be placed in the custody of CPS," they were later released to an unspecified family member. (Id. 3:8-9).

Officers next took Defendant to a police station in Mong Mong where they once more advised him of his Miranda rights, this time in writing. (Def.'s Mot. to Suppress Statements 2:15-16). The standard waiver form contained several bullet points, including "You have the right to remain silent. You do not have to talk to me unless you want to do so," and, "Anything you say can and will be used against you in a court of law." (Id. Ex. A). Although Defendant's handwritten initials and the word "Yes" appear adjacent to each of these points, he refused to sign the waiver form. (Id.).

After verbally "acknowledging his rights," Defendant "stated he was not going to provide any information but would answer the questions asked of him." (Def.'s Mot. to Suppress Statements 2:18-19). According to police reports associated with the case, "after this exchange the agents clarified that [Defendant] was verbally waiving his rights and that [he] still had the right to stop answering at any time." (People's Resp. to Def.'s Mot. to Suppress Statements 6:14-17). He moreover "did not request an attorney but refused to sign a waiver, acknowledging he didn't need one." (Def.'s Mot to Suppress Statements 4:6-7). During the subsequent interview, Defendant is alleged to have made additional inculpatory statements. (Id. 3:1-3).

On July 3, 2014, Defendant moved to suppress the above statements and any "evidentiary fruit obtained as a result of them" pursuant to the Fifth Amendment. (Def.'s Mot. to Suppress Statements). The People objected in their Response on July 17. (People's Resp. to Def.'s Mot. to Suppress Statements).

On August 14, the Court received evidence, heard oral arguments, and took the matter under advisement.

## DISCUSSION

Suppression is unwarranted for both Defendant's statements to police and any evidence obtained as a result of those statements.

### I.    Defendant's Statements to Police

The People do not dispute that at both his residence and later the police station Defendant was subjected to custodial interrogation, thus triggering Miranda protections under the Fifth Amendment. See People v. Sangalang, 2001 Guam 18 ¶ 11 ("The privilege against self-incrimination attaches when the government subjects a defendant to custodial interrogation."). The dispute, instead, is over the validity of the two Miranda waivers.[1]

A defendant may choose to waive his Miranda rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda v. Arizona, 384 U.S. 436, 443-44 (1966). As stated by the Guam Supreme Court, however, there is a "presumption against waiver," Guam v. Rasauo, 2001 Guam 1 ¶ 16, and the People must "provide a valid waiver by a preponderance of the evidence." Id. (citing Colorado v. Connelly, 479 U.S. 157, 168 (1986)).

Validity is measured on two "distinct dimensions": (1) the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). In so measuring, it is appropriate to consider the "totality of the circumstances," including "the background, experience and conduct of the defendant." People v. Angoco, 2007 Guam 1 ¶ 37 (internal quotation marks and citations omitted).

---

[1] Although Defendant nowhere argues he invoked his Miranda rights, it is still important to be mindful of the distinction between an invocation and a waiver. Indeed, as the Supreme Court has pointed out, "[i]nvocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." Smith v. Illinois, 469 U.S. 91, 98 (1984) (per curiam). As the Second Circuit recently found, "a refusal to waive rights, however unequivocal, is not necessarily equivalent to an unambiguous decision to invoke them." United States v. Plugh, 648 F.3d 118, 125-26 (2d Cir. 2011) (emphasis in original). Furthermore, whether invoking the Miranda right to counsel or the right to remain silent, a defendant must do so "unambiguously." Berghuis v. Thompkins, 560 U.S. 370, 381-82 (2010). Alternatively, absent an unambiguous invocation, officers have "no obligation to stop questioning or to ask only questions intended at clarifying an ambiguous statement." Plugh, 648 F.3d at 126 (citing Berghuis, 560 U.S. at 381). Here, in neither instance did Defendant unambiguously invoke his rights.

Here, the People have successfully shown by a preponderance of evidence that Defendant made both waivers voluntarily, knowingly, and intelligently; the waivers were thus valid.

## A.     Defendant's Statements at His Residence

It is unclear whether Defendant argues the verbal waiver at his residence was invalid because it was involuntary or not knowing and intelligent. According to Defendant's Motion, the waiver was "made in the midst of a raid on his home," and "the product of a very stressful situation where he was concerned children would be placed in the custody of [Child Protective Services]." (Def.'s Mot. to Suppress Statements 3:5-8). The Court characterizes this as a voluntariness argument, but in any event the claim fails.

It is well-settled that "coercive police activity is a necessary predicate to the finding that a confession is not voluntary." Connelly, 479 U.S. at 167 (internal quotation marks omitted). Coercive police conduct comes in both physical and mental forms. Arizona v. Fulminante, 499 U.S. 279, 287 (1991) ("[A] finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient."). And, as the Guam Supreme Court has noted, "[b]ecause interrogators often employ forms of psychological coercion, courts may take the defendant's mental condition into account as a factor in determining voluntariness." Sangalang, 2001 Guam 18 ¶ 14 (internal quotation marks omitted). However, the practice of using subtle psychological techniques alone "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry." Id.

It logically follows that mere nervousness or stress is by itself insufficient for a finding of involuntariness. See Sangalang, 2001 Guam ¶ 18. In Sangalang, for instance, the interrogating officer admitted that the defendant, who allegedly suffered from a mental illness, "appeared hyper and nervous, but . . . he surmised that [the defendant] was hyper and nervous about the pullover and arrest." Id. ¶ 16. The defendant further indicated "several times during [a] video re-enactment that he was 'going to explode.'" Id. (citations omitted). Notwithstanding the defendant's agitated state, the Guam Supreme Court held that, in the absence of police coercion, the trial court did not err in denying the motion to suppress. Id. ¶ 18.

Here, as in <u>Sangalang</u>, the nature of the police encounter, independent from any coercion or intimidation, seems to have caused Defendant's stress. The record moreover contains no indication that the interrogating officers took advantage of Defendant's agitated mental state.

Also lacking in the record is any sign that officers threatened, whether explicitly or implicitly, to take custody of the children as a bargaining chip. Defendant mentions without elaboration that "[f]ollowing Mr. Hocog's co-operation with the police, the children were released to a family member." (Def.'s Mot. to Suppress Statements 3:8-9). However, there is no support, and only a vague suggestion in Defendant's Motion, that these two events are causally related.

Rather, the People offer a credible explanation for the officers' brief detainment of the children: Due to the nature of the physical evidence seized in the residence, and the absence of another adult to claim custody of the minors, "it would have been completely inappropriate to allow the minors to roam the residence freely . . . until the police could find some placement (CPS or otherwise) for them." (People's Resp. to Def.'s Mot. to Suppress Statements 4:13-24).[2]

During the evidentiary hearing, the Court heard testimony that comported with points raised in the People's Motion. Officers testified that although Defendant expressed concern for the children, he was not panicked. Throughout the interview, moreover, the children were within Defendant's line of sight and between ten and fifteen feet from him. These are not the indicia of, as phrased by the People, "a gambit to apply pressure."

This outcome also makes sense from a policy standpoint. The Court is inclined to agree with the People's assertion that suppressing statements uttered under stressful circumstances would have the unwelcome effect of suppressing many, if not most, statements made during

---

[2] Not only was the detainment of the children reasonable in light of the circumstances, but it was also well within constitutional bounds. <u>See</u> <u>Michigan v. Summers</u>, 452 U.S. 692, 705 (1981). The Supreme Court held in <u>Summers</u> that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the <u>occupants</u> of the premises while a proper search is conducted." <u>Id.</u> (emphasis added) (internal citations omitted) (finding that the defendant was lawfully detained while walking down the front steps of the house to be searched). Later in <u>Bailey v. United States</u>, the Supreme Court specified that an officer only has authority to detain occupants within the "immediate vicinity" of the premises to be searched. 133 S. Ct. 1031, 1036 (2013). Here, officers confronted the minors and infants upon entering the house to be searched. (People's Resp. to Def.'s Mot. to Suppress Statements 2:1-3). Moreover, there is no indication that the method of detainment itself was unreasonable.

custodial interrogation—an inherently stressful situation—notwithstanding proper <u>Miranda</u> warnings. (People's Resp. to Def.'s Mot. to Suppress Statements 3:24-4:3).

The Court understands that encounters with law enforcement can be stressful, especially in custodial settings. The Court, however, is equally mindful that "suppression of evidence is an extreme remedy," <u>United States v. Hammad</u>, 858 F.2d 834, 837 (2d Cir. 1988), and that the Fifth Amendment requires something more than the anxiety attendant to a police encounter. The request is denied.

### B. Defendant's Statements at the Police Station[3]

Defendant does not clearly specify whether the waiver at the police station is defective because of involuntariness or it was not knowing and intelligent. Defendant claims that because his waiver was "premised on such absurdly contradictory positions," it was not "premised on intelligence and understanding." (Def.'s Mot. to Suppress Statements 4:10-12). The Court characterizes this as a knowledge and intelligence argument, but in any event the claim fails.

A waiver need not be explicit, and may be found in a "course of conduct indicating waiver." <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979). For example, a suspect who has "received and understood the <u>Miranda</u> warnings, and has not invoked his <u>Miranda</u> rights, waives the right to remain silent by making an uncoerced statement to the police." <u>Berghuis</u>, 560 U.S. at 388-89; <u>see also</u> <u>Plugh</u>, 648 F.3d at 127 ("[W]ith a full understanding of his . . . rights [the defendant] acted in a manner inconsistent with their exercise when he chose to begin speaking with custodial agents at the FBI field office, and, as such made a deliberate choice to relinquish the protections those rights afford.").

While certainly relevant, a refusal to sign a waiver form is not conclusive evidence of an invalid waiver. <u>United States v. Andaverde</u>, 64 F.3d 1305, 1314 (9th Cir. 1995); <u>see also</u> <u>Butler</u>,

---

[3] It is worth noting that because the initial interrogation was both warned and voluntary, it is unnecessary to determine whether the subsequent interrogation carries any taint of the first. <u>See</u> <u>Oregon v. Elstad</u> 470 U.S. 298, 311 (1985) (quoting <u>United States v. Bayer</u>, 331 U.S. 532, 540-41 (1947)) ("[A] later confession may always be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed."). Conversely, the existence of an initial valid waiver does not make the validity of a future waiver a foregone conclusion. <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 395 (2010) ("A suspect may at any time revoke his prior waiver of rights . . . by invoking the rights and thereby requiring the police to cease questioning.").

441 U.S. at 375 n. 5 ("The Courts of Appeal have unanimously rejected the . . . argument that refusal to sign a written waiver form precludes a finding of waiver."). Instead, as the Ninth Circuit found, "a refusal to sign a waiver form is an indication that the defendant is invoking his right to silence which casts initial doubt on the government's waiver claim." United States v. Shi, 525 F.3d 709, 729 (9th Cir. 2008) (emphasis in original) (internal quotation marks omitted). The defendant must provide "additional evidence" to "confirm that initial doubt," such as "verbally refus[ing] to answer questions" and being "exhorted to answer by police." Andaverde, 64 F.3d at 1313 (quoting United States v. Heldt, 745 F.2d 1275, 1277-78 (9th Cir. 1984)).

Moreover, being presented with and reading the rights included on a waiver form suggest knowledge and intelligence. United States v. Spencer, 995 F.2d 10, 12 (2d Cir. 1993). In Spencer, the court found it probative that defendant was presented with and read an FBI waiver form. Id. Although he refused to sign the form, he stated he "understood all his rights," and "was prepared to answer [the agents'] questions." Id. The court went on to find his waiver valid. Id.

A suspect's familiarity with the criminal justice system is also indicative of knowledge and intelligence. Spencer, 995 F.2d at 12 (finding it relevant that arrest was not defendant's "first encounter with the criminal justice system"); see also Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995) (finding a defendant with prior arrests to have familiarity with the criminal justice system). This is so because prior experiences with the criminal justice system demonstrate that a suspect has previously "been informed of his constitutional rights against self-incrimination and to counsel." State v. Green, 94-0887 (La. 5/22/95); 655 So. 2d 272, 284.

Here, while there was arguably no explicit waiver of Miranda rights, Defendant's conduct—namely, answering the officers' questions—bespoke waiver. Moreover, he had full knowledge of the nature of those rights. To indicate his understanding, Defendant read, initialed, and wrote "Yes" next to bullet points on the waiver form. (Def.'s Mot. to Suppress Statements Ex. A). The initialed bullet points enumerated the component rights enshrined in Miranda, including "You have the right to remain silent. You do not have to talk to me unless you want to do so," and "Anything you say can and will be used against you in a court of law." (Id.).

Defendant also verbally "acknowledged his rights," (Def.'s Mot. to Suppress Statements 2:18-19), noting in particular that he did not need a lawyer. (Id. 4:6-7). Furthermore, while Defendant stated he would not "provide information" to the officers, he agreed to "answer their questions." (Id. 4:5-6). According to police reports associated with the case, "after this exchange

the agents clarified that [Defendant] was verbally waiving his rights and that [he] still had the right to stop answering at any time." (People's Resp. to Def.'s Mot. to Suppress Statements 6:14-17). Lastly, the Court notes that this is not Defendant's first encounter with law enforcement, and that he thus has some familiarity with the criminal justice system.

The testimony at the evidentiary hearing supports these critical facts. Officers testified that while Defendant was "hesitant" to volunteer information regarding the involvement of a third party, he was willing to answer questions. Officers also confirmed that Defendant acknowledged his rights multiple times.

Although Defendant's conduct was arguably contradictory and "may have alerted the police to inquire further," (Def.'s Mot. to Suppress Statements 4:8-9), the Fifth Amendment did not require it. In spite of his refusal to sign the form, this Court is satisfied that Defendant knowingly and intelligently waived his Miranda rights at the police station. The request is denied. [4]

## II. Any Evidentiary Fruit Obtained from Defendant's Statements

Defendant next requests in passing that "any evidentiary fruit obtained as a result" of his statements be similarly excluded. (Def.'s Mot. to Suppress Statements 1:13-15). Defendant does not specify to which, if any, evidentiary fruit he alludes. Regardless, because officers did not violate Defendant's Fifth Amendment rights in obtaining the statements, there is no basis for suppressing any fruits of the statements. See Wong Sun v. United States, 371 U.S. 471, 484-86 (1963).

Even assuming that Defendant's statements are in some way tainted, the physical evidence collected at Defendant's residence would still be admissible at trial. As the Guam Supreme Court has noted, courts must resolve "whether the challenged evidence was come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." People v. Santos, 2003 Guam 1 ¶ 65 (alteration in original)

---

[4] While the case that Defendant cites in his Motion does support his argument, its facts are ultimately too dissimilar from this case to accord it much persuasive weight. United States v. Jenkins, 440 F.2d 574 (7th Cir. 1971); see also United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968). In Jenkins, for instance, the record before the court was "devoid of any evidence to show that [the defendant's] answers to the agent's questions were in fact voluntary or followed an intelligent (although unwritten) waiver." Jenkins, 440 F.2d at 576. Here, as mentioned above, there is ample evidence that Defendant's waiver was knowing and intelligent.

(quoting <u>Segura v. United States</u>, 468 U.S. 796, 804-05 (1984)). Evidence is not to be excluded, for example, "if police had an independent source for discovery of the evidence." <u>Segura</u>, 468 U.S. at 805 (internal quotation marks omitted).

Here, as the People correctly point out, there is such an independent source. It was the search warrant for Defendant's residence that led to the discovery of the physical evidence, not Defendant's statements. The request is denied.

## CONCLUSION

In light of the foregoing, the Court DENIES Defendant Hocog's Motion to Suppress Statements and any evidence obtained as a result of the statements. A Pretrial Conference is scheduled for November 25, 2014 at 3:00 p.m.

**IT IS SO ORDERED** this day of November 7, 2014.

_____
HONORABLE ALBERTO C. LAMORENA III
Presiding Judge, Superior Court of Guam